UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LATHADIUS K. SIMS,

     Petitioner,

v.                                     CASE NO. 6:09-cv-408-Orl-28KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

     Respondents.

_____

## ORDER

    Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the amended petition (Doc. No. 13), the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the amended petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases for the United States District Courts* (Doc. No. 17). Petitioner filed a reply to the response (Doc. No. 25).

    Petitioner alleges six claims for relief in his habeas petition: (1) trial counsel was ineffective for failing to file a notice of appeal; (2) trial counsel was ineffective for failing to file a timely motion to suppress; (3) trial counsel was ineffective for failing to inform him of an available defense; (4) trial counsel was ineffective for failing to file a pre-sentence motion to withdraw plea; (5) trial counsel was ineffective for failing to object to the errors

in his prior record; and (6) he submitted a timely notice of appeal to prison officials for mailing that was never filed with the clerk of court.

## I.   *Procedural History*

On April 15, 2003, Petitioner was charged by information with conspiracy to traffic in 400 grams or more of cocaine (count one), possession of cocaine with intent to sell or deliver (count two), and possession of a firearm by a convicted felon (count three). Petitioner entered a nolo contendere plea to counts two and three and the State agreed to nolle pros count one. Petitioner also agreed to provide substantial assistance to the Drug Enforcement Agency ("DEA"). The state court deferred sentencing to give Petitioner the opportunity to provide substantial assistance. At sentencing, the State advised that Petitioner did not provide substantial assistance to the DEA agent. On December 13, 2004, the state court sentenced Petitioner to an eight-year term of imprisonment for count two and to a seven-year term of imprisonment for count three. The sentences were ordered to run consecutively to each other. Petitioner did not file an appeal.

On January 11, 2005, Petitioner filed a motion to withdraw his plea which was denied. Petitioner appealed, but the appeal was dismissed for failing to pay the filing fee or file an order of insolvency. The appeal was later reinstated and then voluntarily dismissed.

Petitioner then filed a petition for belated appeal of his convictions with the Fifth District Court of Appeal, alleging that although he requested trial counsel to file a notice of appeal, counsel failed to do so. The appellate court appointed a Commissioner and

2

remanded the case for the Commissioner to conduct an evidentiary hearing regarding Petitioner's entitlement to a belated appeal. At the evidentiary hearing, Petitioner conferred with counsel and decided to voluntarily dismiss the petition for belated appeal. On May 25, 2005, the appellate court dismissed the petition for belated appeal.

Petitioner then filed a motion for modification of sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure. The trial court denied the motion, but corrected a mistake on Petitioner's scoresheet. Petitioner then filed a Rule 3.850 motion for post-conviction relief, asserting two claims for relief. After holding an evidentiary hearing on the claims, the state trial court denied relief. Petitioner appealed the state court's denial of his first claim only. The Fifth District Court of Appeal *per curiam* affirmed.

While the appeal of the denial of the Rule 3.850 motion was pending, Petitioner filed a second petition for belated appeal of his convictions, arguing that he had placed a notice of appeal in the hands of prison officials for mailing but the appeal was not filed with the clerk. The Fifth District Court of Appeal again appointed a Commissioner to conduct an evidentiary hearing on the issue. The Commissioner recommended that the petition for belated appeal be denied. Thereafter, the appellate court denied the petition for belated appeal.

Petitioner filed a second Rule 3.850 motion for post-conviction relief raising an additional four grounds. The motion addressed two separate cases, lower court case number 48-2001-CF-462-O and lower court case number 48-2003-CF-3110-O, the case at issue here. The state court determined it was without jurisdiction to address the claims

3

relating to lower court case number 48-2003-CF-3110-O as the appeal from the denial of the first Rule 3.850 motion was still pending. Finding it was untimely filed, the state court denied the motion as it related to lower court case number 48-2001-CF-462-O and dismissed the motion as it related to lower court case 48-2003-CF-3110-O.

Petitioner then filed, with the state appellate court, a petition for writ of habeas corpus alleging ineffective assistance of counsel. The Fifth District Court of Appeal denied the petition. Following the denial, Petitioner filed a third Rule 3.850 motion for post-conviction relief with the state trial court. The state trial court denied the motion, finding the motion was untimely filed and the claims contained within the motion were procedurally barred. On appeal, the appellate court *per curiam* affirmed the lower court's denial of the Rule 3.850 motion.

Petitioner filed a third petition for belated appeal, seeking a belated appeal of the dismissal of his second Rule 3.850 motion. The Fifth District Court of Appeal granted the petition. The appellate court then *per curiam* affirmed the state court's dismissal of Petitioner's second Rule 3.850 motion for post-conviction relief. Petitioner also filed a motion to set aside or vacate judgment and sentence with the state trial court. The state trial court denied this motion. On appeal, the Fifth District Court of Appeal *per curiam* affirmed the lower court's denial of this motion. The instant federal habeas corpus petition followed.

4

## II.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a

claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision." *Williams v. Taylor,* 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions;

the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.,* 432

F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head,* 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."[1] *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker,* 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2]   *Id.* at 687-88.   In *Hill v.*

---

[1]In considering the "unreasonable application"inquiry, the Court must determine "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409. Whether a state court's decision was an unreasonable application of law must be assessed in light of the record before the state court. *Holland v. Jackson,* 542 U.S. 649, 652 (2004) (*per curiam*); *cf. Bell v. Cone,* 535 U.S. 685, 697 n. 4 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).

[2]In *Lockhart v. Fretwell,* 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*Lockhart*, 474 U.S. 52, 58 (1985), the United States Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

III. *Analysis*

A. *Claim One*

Petitioner claims that trial counsel rendered ineffective assistance by failing to file

a notice of appeal even though he was requested to do so. Respondents argue that this claim is unexhausted. The Court agrees.

Pursuant to the AEDPA, federal courts are precluded, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing Picard, 404 U.S. at 275-76) (internal quotation marks omitted); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). Although Petitioner raised the instant claim in his petition for belated appeal (App. N), Petitioner elected to voluntarily withdraw his petition for belated appeal (App. P and Q). The Court cannot consider this claim as it was not considered by the state courts.

Moreover, the Court is precluded from considering this claim, as the claim would be procedurally defaulted if Petitioner returned to state court. *Smith v. Secretary Department of Corrections*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.")). Petitioner could not return to the state court to raise this ground, as he has already filed a second petition for belated appeal in the state court. A

8

third belated appeal petition would be untimely or successive. Fla. R. App. P. 9.141(c)(4)(A) & (5)(C). Thus, this claim is procedurally defaulted.

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense, in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

Petitioner argues that he raised claim one in his second petition for belated appeal

and therefore the claim was exhausted. Petitioner is correct (App. GG). However, the Commissioner appointed by the Fifth District Court of Appeal found that Petitioner waived this claim when he made an informed, strategic decision to voluntarily dismiss his first belated appeal and instead pursued his post-conviction remedies (App. JJ). The Fifth District Court of Appeal accepted the Commissioner's report and recommendation and denied the petition (App. KK).

"Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, . . . who attempts to raise [his federal constitutional claim] in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court." *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994); *Swain v. Singletary*, 42 F.Supp.2d 1284, 1290 (M.D. Fla. 1999). In the instant case Petitioner attempted to raise his claim that trial counsel failed to file a notice of appeal for a second time even though he had already waived this claim. In Florida, state courts can dismiss a second petition for belated appeal because it is a second or successive petition. *See Pless v. State*, 987 So. 2d 740, 741 (Fla. 1st DCA 2008); *Hill v. State*, 724 So. 2d 610 (Fla. 5th DCA 1998). Thus, claim one is procedurally defaulted, as the Commissioner found that Petitioner was barred from re-raising the claim in a second petition for belated appeal. Furthermore, this Court will apply the state procedural bar and will not address the claim on the merits. Petitioner has not demonstrated cause or prejudice that would excuse any procedural default, nor has he shown the applicability of the actual innocence exception.

10

### B.    *Claim Two*

In his second claim Petitioner alleges that trial counsel was ineffective for failing to file a timely motion to suppress.  Petitioner raised this claim in his first Rule 3.850 motion for post-conviction relief (App. S).  The state trial court held an evidentiary hearing on this claim (App. V).

Petitioner testified at the evidentiary hearing that his trial attorney, Francis Blankner ("Blanker") told him that he would file a motion to suppress in the case because Blankner believed that the search of Petitioner's car was improper (App. V at T 10-11).  Blankner explained that if they were successful on the motion to suppress, counts two and three would be dismissed.  *Id.* at T 11.  Blankner also told Petitioner that if those two charges were dismissed, the State would not be able to convict him of count one, conspiracy to traffic.  *Id.*  Petitioner contacted Blankner's office several times to find out the status of his case and only spoke with Blankner one or two times before he entered his plea.  *Id.* at T 12.  During those communications with counsel, Petitioner asked about the status of the motion to suppress and Blankner indicated that he was working on the issue.  *Id.* at T 12-13.

Petitioner testified that he appeared in court with Blankner in July 2003, for a status hearing.  *Id.* at T 13.  During that hearing, the State made a plea offer to Petitioner for ten years in prison, however, counsel advised Petitioner to reject this offer.  *Id.* at T 13.  When Petitioner appeared in court on September 18, 2003, he was unaware that he would be entering a plea at that time and instead thought that there would be a status hearing or a hearing on the motion to suppress.  *Id.* at T 14.  Petitioner spoke with Blankner prior to the

11

hearing, and Blankner told him that he did not have an opportunity to file a motion to suppress. *Id.* at T 15. Blankner also stated that although he could ask for a continuance, the Judge probably would not grant him additional time to file the motion because there had been numerous continuances in the case. *Id.* Blankner informed Petitioner that a DEA agent was willing to work with him. *Id.* at T 16. Blankner spoke with the prosecuting attorney for a few moments and then returned with a plea agreement. *Id.* at T 16-17. Petitioner understood that if he entered a plea, he could provide substantial assistance and receive only 26.5 months in prison. *Id.* at T 17.

Blankner testified at the evidentiary hearing that he could have filed a motion to suppress the evidence seized from Petitioner's car based upon the vehicle stop. *Id.* at T 40-41. He stated that he had not been able to file the motion by the time the State decided to drop the conspiracy to traffic charge and offer a plea to the remaining two charges. *Id.* at T 41. Blankner advised Petitioner that the state court might not allow him to file a motion to suppress because the motion was filed beyond the deadline. *Id.* Moreover, Blankner told Petitioner that he felt it was in Petitioner's best interest to enter a plea and attempt to substantially assist the DEA agent. *Id.* Blankner testified that ordinarily, the State would "become highly upset and agitated" if a defendant took the benefit of their offer and also pursued a motion to suppress. *Id.* Although Blankner thought that there were grounds for the trial court to grant a motion to suppress, Blankner also noted that many motions to suppress are denied. *Id.* at T 42. Blankner had a discussion with Petitioner about the fact that if he attempted to provide substantial assistance then a motion to suppress would not

12

be filed. *Id.* at T 47.

Assistant State Attorney Mark Graham then testified that he took over the case in September 2003, after the prior prosecutor had done a substantial amount of work in the case. *Id.* at T 59-60. Graham did not think that there were any "glaring suppression issues" in the case. *Id.* at T 64.

The state trial court denied Petitioner's Rule 3.850 motion, stating the following with respect to claim two:

> In Ground 1 of his motion, Defendant contends that trial counsel was ineffective for failing to file a motion to suppress. He has filed an accompanying Motion to Suppress in which the allegation is that the search of Defendant's vehicle, including the locked glove compartment, was illegal because there was no consent given by Defendant and no search warrant.
>
> At the hearing on Defendant's Motion, trial counsel, Mr. Blankner, testified that he did believe there was a decent basis to file a motion to suppress and that he did intend to file a motion to suppress, however, the State then made its offer of a significantly decreased term of incarceration if Defendant would plead to counts 2 and 3 and agree to perform substantial assistance. Mr. Blankner testified that he then believed it would be in Defendant's best interest to enter a plea for the reasons that he felt Defendant would be able to satisfactorily provide substantial assistance, the term of potential incarceration was greatly reduced, and lastly, for the reason that Defendant would be in a much worse position if the motion to suppress were denied. The assistant state attorney testified at the hearing that he did not see any glaring suppression issues at the time.
>
> Mr. Blankner admitted that part of the decision not to file the motion to suppress was strategic. Mr. Blankner further testified that he did have discussions with Defendant regarding the choice not to file the motion to suppress and taking advantage of the State's offer to provide substantial assistance and that Defendant did choose to enter the plea.
>
> A review of the facts in the police report supports the fact that law enforcement had probable cause to believe that Defendant was involved with the co-defendant in a conspiracy to traffic cocaine, or in a conspiracy to sell

or deliver cocaine. Thus, the search of Defendant's vehicle, including the locked glove compartment where the cocaine and firearm were located, was legal as incident to a valid arrest. *See State v. Gonzalez*, 507 So. 2d 772 (Fla. 3d DCA 1987). Whether the search occurred before or after the arrest is immaterial as long as probable cause for the arrest existed. *See State v. Smith*, 520 So. 2d 1226, 1230 (Fla. 3d DCA 1988).

Defendant has failed to demonstrate that the outcome of the case, as a whole, would have been different. Moreover, it is apparent that the filing of the motion to suppress would have jeopardized the willingness of law enforcement and the State to allow Defendant to engage in substantial assistance.

(App. W). The Fifth District Court of Appeal *per curiam* affirmed the lower court's denial of this claim.

The record supports the state trial court's finding that trial counsel did not act deficiently in this case pursuant to *Strickland*. Although Blankner did not file a motion to suppress prior to the plea hearing, once the State decided to nolle pros the trafficking charge and offer a plea agreement with the opportunity for substantial assistance, counsel thought it was in Petitioner's best interest to forego filing a motion to suppress and accept the plea deal. The United States Supreme Court has noted that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). Moreover, the Court stated that "strategic choices made after less than complete investigation are reasonabl[e] . . . to the extent . . . professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.*

Petitioner has not shown that trial counsel acted deficiently pursuant to *Strickland*

14

because counsel's decision to forego filing a motion to suppress amounted to strategy. Petitioner cannot demonstrate that the state court's determination was contrary to, or involved an unreasonable application of federal law, nor has he shown that the state court's denial of this claim resulted in an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). The state court's factual findings are presumed correct, and Petitioner has not rebutted those findings by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001). Therefore, this claim is denied.

Furthermore, even if Petitioner had demonstrated that counsel acted in a deficient manner by failing to file a motion to suppress, Petitioner has not demonstrated that this failure prejudiced the outcome, in that he has not shown that but for counsel's deficiencies he would not have entered the plea and instead would have gone to trial. To establish prejudice in the context of ineffective assistance of counsel for failure to raise a Fourth Amendment claim, a petitioner must show that "(1) the underlying Fourth Amendment issue has merit and (2) there is a 'reasonable probability that the verdict would have been different absent the excludable evidence.'" *Green v. Nelson*, 595 F.3d 1245, 1251 (11th Cir. 2010) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).

The police report filed in this case demonstrates that a motion to suppress, if filed, would not have been meritorious because the DEA agents had probable cause to search Petitioner's car (Attached at App. T). In February 2003, a confidential informant contacted DEA Agent Harmon ("Harmon"), stating that he found a person who could provide one

15

half kilogram of cocaine. *Id.* The confidential informant recorded telephone conversations with this person, identified as Gregory McGriff ("McGriff"). *Id.* At the direction of Harmon and Metropolitan Bureau of Investigation Agent Wright ("Wright"), the confidential informant set up a meeting to purchase one half of a kilogram of cocaine. *Id.* On March 12, 2003, the confidential informant met with McGriff and discussed the details of delivering the cocaine. *Id.* The conversation was recorded by Harmon. *Id.* The following day, McGriff told the confidential informant that he would deliver one to two ounces of cocaine initially and later would complete the deal for the remainder of the half kilogram of cocaine. *Id.* McGriff stated that his source wanted to complete the transaction in this manner. *Id.* McGriff asked the confidential informant to meet at his home in Orlando, Florida. *Id.*

Agents traveled to McGriff's address, and noted the arrival of a blue Buick LaSabre registered to Petitioner. *Id.* Petitioner had previous arrests for narcotics trafficking. *Id.* At that same time, McGriff contacted the confidential informant and told him that his source had arrived. *Id.* The agents ordered the confidential informant to tell McGriff that he was uncomfortable completing the transaction at the residence. *Id.* After some discussion, McGriff agreed to meet the confidential informant and Harmon, acting undercover, at a bowling alley. *Id.* Agents watched McGriff enter his vehicle and drive to the bowling alley. *Id.* Petitioner followed McGriff in his vehicle. *Id.* The agents made contact with McGriff and Petitioner, and their vehicles were then searched. *Id.* Agents found a handgun and cocaine in the glove compartment of Petitioner's vehicle. *Id.*

16

Although Petitioner alleges that the search of his vehicle was illegal, the law is well settled that warrantless searches of vehicles are proper when the search is based on probable cause. *Chambers v. Maroney*, 399 U.S. 42 (1970); *Carroll v. United States*, 267 U.S. 132 (1925); *United States v. Kramer*, Case No. 07-80136-CR, 2008 WL 54397, at *11 (S.D. Fla. Jan. 2, 2008). Probable cause exists "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect ha[s] committed or was committing a crime." *Williams v. Sirmons*, 307 F. App'x 354, 358 (11th Cir. 2009) (citing *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)).

The law enforcement officers had probable cause to search Petitioner's vehicle, as they had a reasonable belief that a crime was being committed by Petitioner. McGriff told the confidential informant that he was waiting for his source, and as Petitioner arrived at McGriff's residence, McGriff told the confidential informant that his source arrived. McGriff made arrangements to deliver cocaine to the confidential informant and Harmon at a bowling alley. Petitioner followed McGriff to the bowling alley. These facts demonstrate that the law enforcement officers had a reasonable belief that McGriff and Petitioner were conspiring to commit the crime of trafficking in cocaine. Thus, it was reasonable for the law enforcement officers to believe that there might be evidence relevant to the trafficking crime in Petitioner's vehicle. Therefore, the search of Petitioner's vehicle for contraband was proper.

The record supports the state trial court's finding that a motion to suppress would not have been granted had it been filed. These findings have not been rebutted by clear

17

and convincing evidence. Accordingly, this claim is denied.

### C.    Claims Three, Four, and Five

Petitioner alleges in claim three that trial counsel was ineffective for failing to inform him of an available defense. In claim four Petitioner states that trial counsel was ineffective for failing to file a pre-sentence motion to withdraw plea. In his fifth claim, Petitioner argues that trial counsel was ineffective for failing to object to the errors in his prior record. Respondents argue that these claims are procedurally defaulted because the state court found them to be procedurally barred. This Court agrees.

Petitioner first raised the instant claims in his second Rule 3.850 motion (App. LL). The state trial court dismissed the motion, stating the court was without jurisdiction to hear the claims (App. MM). Petitioner then filed a third Rule 3.850 motion for post-conviction relief alleging the same claims (App. UU). The state trial court found the claims to be procedurally barred because the motion was untimely and successive (App. VV). The Fifth District Court of Appeal *per curiam* affirmed the lower court's denial of Petitioner's Rule 3.850 motion (App. BBB). A *per curiam* affirmance of a trial court's finding of procedural default is a sufficiently clear and express statement of reliance on an independent and adequate state ground to bar consideration by the federal courts. *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990). Therefore, the Court will apply the state procedural bar and will not address these claims on the merits.

Petitioner argues that the state court incorrectly found that his third Rule 3.850 motion was untimely (Doc. No. 25 at 4-5). Specifically, Petitioner states that he timely filed

18

his second Rule 3.850 motion, and therefore, when the state court dismissed the motion for lack of jurisdiction, it should have given him a period of time in which to re-file his motion. *Id.* In *Mendes v. State*, 770 So. 2d 202, 202 (Fla. 4th DCA 2000), the state court dismissed the appellant's motion for post-conviction relief with leave to amend, but did not set a limitation on when the amended motion could be filed. The Fourth District Court of Appeal reversed the dismissal of the amended motion as untimely filed, and remanded for a ruling on the merits. *Id.* Similar to *Mendes*, in this case Petitioner's second Rule 3.850 motion was dismissed for lack of jurisdiction. The state court did not give Petitioner a specific amount of time in which to re-file his motion. Therefore, the state court should not have dismissed Petitioner's third Rule 3.850 motion as untimely filed.

The Court notes, however, that the state court also determined that Petitioner's third Rule 3.850 motion was impermissibly successive. Although Petitioner argues that the state court did not rely on Rule 3.850(f) to dismiss his petition, this Court disagrees. The state court, in finding Petitioner's claims procedurally barred, stated "all potential Rule 3.850 claims must be raised in a single motion. Defendants are not permitted to submit additional grounds for relief on a piecemeal basis, particularly with respect to ineffective assistance of counsel claims" (App. VV at 2-3). The state court cited *Scott v. State*, 656 So. 2d 204 (Fla. 5th DCA 1995) and *Christopher v. State*, 489 So. 2d 22 (Fla. 1986) to support its determination. *Id.* In *Scott*, the Fifth District Court of Appeal found the appellant's second Rule 3.850 motion was successive and bordered on an abuse of process. 656 So. 2d at 204. The court observed that even if the appellant's claims were different from those raised in

19

his first Rule 3.850 motion, he could not raise his claims in a piecemeal fashion. *Id.; see also Christopher*, 489 So. 2d at 24 (stating courts may summarily deny successive motions for post-conviction relief unless the movant alleges that the asserted grounds were not known and could not have been known at the time the first motion was filed).

The state court found Petitioner's third Rule 3.850 motion was successive and thus the claims were procedurally barred. The procedural default will be excused only if Petitioner can show "cause" for the default and "prejudice" resulting from the default. *Wright*, 169 F.3d at 703. The procedural default will be excused upon a showing that there has been a "fundamental miscarriage of justice," such as a "constitutional violation [that] has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Petitioner does not allege that he is actually innocent. Instead, Petitioner argues that he did not have enough information to raise claims three, four, and five until after he filed his first Rule 3.850 motion. However, the Court notes that claims three, four, and five all relate to the events that occurred during and immediately after Petitioner's entry of his plea, therefore, it is difficult to conceive of how Petitioner could not have known about these claims when he filed his first Rule 3.850 motion. Petitioner states that he did not have the complete record of his case, however, the complete record and transcripts are not necessary for filing post-conviction motions, as prisoners are not required to file or cite to transcripts. Petitioner also does not allege that he has newly discovered evidence that could not have been discovered previously. Petitioner has not shown cause or prejudice

20

.

that would excuse any procedural default. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, claims three, four, and five are procedurally barred from review by this Court.

### D.   Claim Six

Petitioner alleges in claim six that he submitted a timely notice of appeal to prison officials for mailing but the notice of appeal was never filed with the clerk of the state court. Respondents argue that the instant claim is unexhausted.

Petitioner raised this claim in his second petition for belated appeal (App. GG). The Fifth District Court of Appeal appointed a commissioner to hold a hearing on the issue (App. II). The Commissioner recommended that the appellate court deny the petition for belated appeal stating that because Petitioner voluntarily dismissed his first belated appeal, he had forfeited or waived his right to a belated appeal (App. JJ). The Fifth District Court of Appeal accepted the Commissioner's findings and denied the second petition for belated appeal (App. KK).

Although Petitioner raised claim six in the state court, he did not cite to federal or United States Supreme Court cases and only raised a state law claim. In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76). "'Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" *Jiminez v. Fla.*

21

*Dept. of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007) (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998)) (determining that the petitioner exhausted certain claims on direct appeal even though he failed to indicate that the claims were to reviewed under the Federal Constitution, because he provided sufficient information about the claims, including cites to Supreme Court cases, to notify the state courts that the issues were raised on both state and federal grounds.). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of a law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Petitioner having failed to indicate a federal law basis, claim six is unexhausted.

Furthermore, this Court is precluded from considering the claim, as the claim would be procedurally defaulted if Petitioner returned to state court. *Smith v. Secretary, Dept. of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009) (citing *Snowden*, 135 F.3d at 736). Petitioner could not return to the state court to raise this ground, as the state courts would dismiss a third petition for belated appeal as untimely or successive. Fla. R. App. P. 9.141(c). Petitioner has not shown either cause or prejudice that would excuse any procedural default. Likewise, he has not shown the applicability of the actual innocence exception. A review of the record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. This claim is procedurally barred.

Any of Petitioner's allegations not specifically addressed herein have been found to

be without merit.

## IV. *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reasons would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

23

1.     The Amended Petition for Writ of Habeas Corpus filed by Lathadius K. Sims

(Doc. No. 13) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. The Clerk of

the Court shall enter judgment accordingly.

2.     Petitioner is **DENIED** a Certificate of Appealability.

3.     The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 21 day of April, 2011.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 4/20
Counsel of Record
Lathadius K. Sims